UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 14-3431-McAliley

UNITED STATES OF AMERICA

vs.

ARDIS HINOJOSA et al.,

    Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  _____ Yes   __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  _____ Yes   __X__ No

          Respectfully submitted,

          WIFREDO A. FERRER
          UNITED STATES ATTORNEY

BY:    _____
          Kurt K. Lunkenheimer
          ASSISTANT UNITED STATES ATTORNEY
          Court ID No. A5501535
          99 N.E. 4th Street
          Miami, Florida 33132-2111
          TEL (305) 961-9008
          FAX (305) 536-7213
          Kurt.Lunkenheimer@usdoj.gov

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| ARDIS HINOJOSA, HENDER GOMEZ, JORGE DELUQUE, and CARLOS OSPINO, | ) ) ) ) ) | Case No. 14-3431-McAliley |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **November 13, 2014** in the county of **Miami-Dade** in the **Southern** District of **Florida**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 46, United States Code, Section 70506(b) | Did knowingly and willfully conspire to possess with the intent to distribute a controlled substance, while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. 70503(a)(1); all in violation of 46 U.S.C. 70506(b). Pursuant to 46 U.S.C. 70506(a), and 21 U.S.C. 960(b)(1)(B)(ii), it is further alleged that this violation involved five kilograms or more of a mixture and substance containing a detectable amount of cocaine. |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Patrick L. Gittelsohn, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/23/2014

*Judge's signature*

City and state: Miami, Florida    Hon. Chris M. McAliley
*Printed name and title*

## AFFIDAVIT

I, Patrick L. Gittelsohn, being duly sworn, hereby depose and state the following:

1.      I am a Special Agent with the Drug Enforcement Administration (DEA), and have been so employed since September 2007. I am presently assigned the Miami Field Division, where I am responsible for conducting investigations into violations of federal controlled substance laws. As a special agent with DEA, I have participated in numerous narcotics investigations, both international and domestic, involving physical and electronic surveillance and the control and administration of confidential sources. I have participated in the arrest and subsequent prosecution of numerous drug traffickers. I also have spoken on numerous occasions with informants, suspects, and experienced narcotics investigators concerning the manner, means, methods and practices that drug traffickers use to further their drug trafficking operations and the most effective methods of investigating and dismantling drug trafficking organizations.

2.      As a law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, I am empowered by law to conduct investigations of and make arrests for, but not limited to, offenses enumerated in Titles 21 and 46 of the United States Code.

3.      The information contained in this affidavit is submitted for the sole purpose of establishing probable cause against Ardis HINOJOSA, Hender GOMEZ, Jorge DELUQUE, and Carlos OSPINO for violations of Title 46, United State Code, Sections 70503(a)(1) and 70506(b), that is, knowingly and willfully conspiring to possess with intent to distribute five kilograms or more of cocaine, while on board a vessel subject to the jurisdiction of the United States.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not contain all of the information known to me and other law enforcement officers involved in this investigation. The facts and information contained in this affidavit are based on my personal knowledge and observations, as well as upon information received in my official capacity from other individuals, including other law enforcement officers involved in this investigation as well as my review of records, documents, and other physical items obtained during the course of this investigation.

5. On or about November 13, 2014, while on routine patrol in the Central Caribbean Sea, a maritime patrol aircraft (hereinafter "MPA") detected a go-fast type vessel ("GFV"), approximately 90 nautical miles south of the Dominican Republic, in international waters, and upon the high seas. The MPA tracked the vessels on a northerly course at a speed of approximately 15 knots per hour.

6. The surveillance of the GFV was relayed to United States Coast Guard (hereinafter "USCG") personnel aboard a British vessel, the HMS *Argyll*. The HMS *Argyll* altered coarse to intercept the GFV. Additionally, HMS *Argyll* launched two small boats with boarding teams both manned by USCG personnel.

7. When the HMS *Argyll* and the small boats came within approximately 6 nautical miles of the vessel, which was still in international waters and upon the high seas, they energized their law enforcement lights, which is a internationally recognizable action to order a vessel to heave to. The GFV, however, did not heave to and actually increased speed and made evasive maneuvers. The crew of the GFV then began jettisoning packages into the water as the vessel attempted to evade the HMS *Argyll* and its small

2

boats which held USCG personnel. The location of the jettisoned packages was marked by the MPA.

8. The small boats continued their pursuit until the GFV came to a dead stop in international waters and upon the high seas. At that time, the captain and three crew members complied with the orders of USCG personnel and the GFV was boarded.

9. Ardis HINOJOSA identified himself as the Captain of the GFV. HINOJOSA advised that the vessel was not registered to any country and there was no documentation pertaining to the vessel's nationality on board. The crew was asked their nationality and they all claimed Colombian nationality. The captain and crew of the ship were then detained aboard the HMS *Argyll*. The GFV was deemed a ship without nationality and was later sunk as a hazard to navigation.

10. Later, USCG personnel conducted a search of the area where the crew of the GFV was observed jettisoning packages. USCG personnel recovered from the ocean approximately twenty-nine (29) bales of brick-like objects consistent with the packaging and appearance of narcotics. The bales were secured on board the HMS *Argyll* and a field test was conducted. The field test returned a positive response for the presence of cocaine. The weight of the recovered cocaine bales was reported to be approximately 658 kilograms.

11  On November 21, 2014, custody of the GFV captain and crew was transferred to United States law enforcement officers. That same day, the Captain and crew were escorted to Fort Lauderdale, Florida, Broward County, in the Southern District of Florida, where they first entered the United States. The crew members were identified as Jorge DELEQUE, Hender GOMEZ, and Carlos OSPINO.

12.	HINOJOSA, DELEQUE, GOMEZ and OSPINO were advised of their *Miranda* warnings. Each indicated that he understood his rights and each agreed to speak with law enforcement officers.

13.	In his post-*Miranda* statement, HINOJOSA stated that the he was the captain of the GFV and that he was contacted at his residence in Colombia by three members of a drug trafficking organization ("DTO") sometime before November 14, 2014. HINOJOSA identified one of the individuals by the alias "Gordo." HINOJOSA explained that Gordo offered him $250,000,000 Colombian pesos to captain a vessel containing 500 kilograms of cocaine. HINOJOSA agreed and was later given a GPS device with pre-programmed coordinates. HINOJOSA stated that he was instructed to take the vessel to the coordinates in the GPS which would be approximately 100 nautical miles off the coast of the Dominican Republic. He would be met there by another boat crew where the drugs would be off loaded or the GFV would be turned over. HINOJOSA agreed to the smuggling venture. HINOJOSA admitted that he knew the payload aboard the GFV was cocaine. HINOJOSA stated that he hired DELUQUE and OSPINO to assist in the drug smuggling operation, and he stated that GOMEZ was hired by the DTO.

14.	In his post-*Miranda* statement, OSPINO stated that he was hired as crew for the drug smuggling run by HINOJOSA. OSPINO's primary job was to bail water out of the GFV order to keep the vessel buoyant. OSPINO admitted that he knew that the cargo in the GFV was cocaine and that he expected to be paid for his assistance, although he did not know how much he was to be paid.

4

15.     In his post-*Miranda* statement, DELUQUE confirmed that he was also hired by HINOJOSA to assist in the smuggling venture. DELUQUE admitted that he knew the cargo aboard the GFV was cocaine, although he did not know the size of the load. He stated that he would be paid $35,000,000 Colombian pesos by HINOJOSA upon successful completion of the smuggling operation. DELUQUE's primary job aboard the GFV was as relief captain for HINOJOSA.

16.     In his post-*Miranda* statement, GOMEZ explained that he was approached by a Colombian male identified as "Gordo," prior to November 14, 2014. According to GOMEZ, he was offered the job as security officer for the drug load that was concealed in the GFV. GOMEZ stated that he was instructed not to allow anyone aboard the GFV to tamper with the cargo. GOMEZ stated that he knew that the cargo aboard the vessel was cocaine and he expected to be paid $500,000 Colombian pesos for his services.

17. Based on the foregoing facts, I submit that probable cause exists to believe that Ardis HINOJOSA, Hender GOMEZ, Jorge DELUQUE and Carlos OSPINO, while on board a vessel subject to jurisdiction of the United States, did knowingly and willfully conspire to possess with the intent to distribute a controlled substance, that is five kilograms or more of cocaine, in violation of Title 46, United States Code, Sections 70503(a)(1) and 70506(b).

FURTHER AFFIANT SAYETH NAUGHT

PATRICK L. GITTELSOHN
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Sworn and subscribed before me this
23rd Day of November, 2014 at Miami, Florida

HON. CHRIS M. MCALILEY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA